UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |
|---|---|
| EDDIE JONATHAN SMITH, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>DOLLAR TREE, INC.,<br><br>      Defendant. | CASE NO.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**I.     PRELIMINARY STATEMENT**

1. This is a consumer class action under federal law brought on behalf of applicants for employment, transfer, and/or promotion with Dollar Tree, Inc. ("Dollar Tree" or "Defendant").

2. Dollar Tree, Inc. is a leading operator of discount variety stores operating under the brands Dollar Tree and Family Dollar, and is headquartered in Chesapeake, Virginia. It has over 200,000 employees.

3. Dollar Tree systematically violates the rights of job applicants about whom it obtains consumer reports (also called "background checks") provided by section 1681b(b)(3) of the Fair Credit Reporting Act ("FCRA") by using consumer reports to take adverse employment actions without, *beforehand*, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA.

4. These failures leave applicants without any meaningful opportunity to correct any errors on the report or to discuss the content of the report with Dollar Tree.

1

5. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as Dollar Tree. This action involves Dollar Tree's systematic violations of these important rules.

6. Plaintiff Eddie Smith was denied employment with Dollar Tree based upon a standardized background screen conducted by Sterling Infosystems, Inc. (hereafter, "Sterling").

7. Upon information and belief, Dollar Tree contracts with Sterling to perform a standardized background screen on all consumers who apply to Dollar Tree for hire, promotion, or transfer.

8. In October 2023, Mr. Smith sought employment with Dollar Tree. After the application and interview process, Dollar Tree gave him a conditional offer of employment contingent on passing a background check. Dollar Tree then ordered a consumer report about Mr. Smith from Sterling. Devastatingly for Mr. Smith, Sterling included on its report criminal convictions that did not belong to Mr. Smith, but rather a different person of the same name.

9. Although Dollar Tree purports to comply with the FCRA's requirement that it provide notice, a copy of the background report, and a statement of FCRA rights *before* it takes adverse action, in reality it takes adverse action immediately upon receiving a negative background check. Any purported opportunity to dispute or discuss the contents of the report is illusory.

10. Dollar Tree willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from Sterling before the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3).

11.  Every year, individuals who have applied to Dollar Tree for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

12.  Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and classes of similarly situated employment applicants for whom Dollar Tree failed to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## II.  JURISDICTION & VENUE

13.  Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

14.  Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendant has harmed Class Members residing in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action. Further, the primary torts and injuries originated and occurred here.

## III.  PARTIES

15.  Plaintiff is an adult individual who resides in Georgia.

16.  Defendant is a registered Virginia corporation with its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320.

## IV.  FACTUAL ALLEGATIONS

### A.  Dollar Tree's Use of Sterling's Screening Services

17.  Dollar Tree operates a network of over 8,000 low-priced retail stores across the United States and Canada.

18.  Sterling Infosystems Inc. (USA) ("Sterling") is a consumer reporting agency which provides "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), background and employment screening services, and decision-making intelligence to prospective employers.

3

19. Sterling investigates and reviews public record and private databases and assembles and/or maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

20. From its files, Sterling sells consumer reports to potential employers (such as Dollar Tree) wishing to review the criminal record history, or lack thereof, of various job applicants or employees.

21. In addition to providing background reports, Sterling offers to its employment screening customers an enhanced service where, in addition to creating a background report about an applicant or employee, Sterling will also review the report to determine whether it meets the employer's hiring criteria. Under this service, the employer develops a "matrix" together with Sterling which establishes the records that will disqualify the applicant or employee and lead to an adverse action if they appear on a background report. Sterling then applies these standards as part of the creation of the report, delivering a "score" or "flag" on the face of the report indicating whether the candidate is eligible or ineligible for employment. This type of enhanced background screening service is known in the background screening industry as "adjudication."

22. The adjudication service is attractive to Sterling's customers such as Dollar Tree, who are constantly hiring and promoting in high volumes because it provides the customer with a remote, outsourced tool to make employment decisions rapidly.

23. Sterling offers customers the possibility of using its screening service both to screen applicants for employment, and current employees either on a recurring basis, or in connection with a promotion or transfer to a different role.

24. Dollar Tree used and/or continues to use Sterling's screening services to conduct background checks on applicants for employment and employees.

25. The background reports resulting from these services are obtained by and delivered to Dollar Tree.

26. Under the FCRA, any "person" using a consumer report, such as Dollar Tree, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, before taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A); *see also Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633-35 (D. Or. 2015) (certifying 1681b(b)(3) claims of class of applicants for placement through a staffing agency); *Goode v. LexisNexis Risk & Info. Analytics*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (more than one business can be a user of a single background report; "Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b). Thus, defendant is a person and must comply with § 1681b(b)(3)(A).").

27. There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA.  The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative

information in case the report is inaccurate or incomplete." *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

28. A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

29. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him or her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

30. Pursuant to its standardized procedures, Dollar Tree provides job applicants with a copy of their consumer reports and a statement of their FCRA rights before it takes adverse action against them based upon the information in such reports, but does not amend its adverse action decisions based on any successful disputes of such despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

31. The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendant failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A)

**B.     The Experience of Plaintiff Eddie Smith**

32. In October 2023, Mr. Smith applied for employment with Defendant.

33. After completing the employment application and interview, on or about October 18, 2023, Dollar Tree extended Mr. Smith an offer of employment, contingent upon successful completion of his pre-employment background check.

34. On or about October 25, 2023, Defendant obtained a consumer report about Mr. Smith from Sterling.

35. Sterling reported in its consumer report that Mr. Smith was associated with a number of criminal convictions, including at least one felony. None of these convictions were for the Plaintiff, Mr. Smith, but were for a different person of the same name.

36. Sterling highlighted the criminal records on the report with the result "LEVEL3" in red lettering, indicating an adverse result.

37. By contrast, the portions of the report where no adverse records were located were designated either "COMPLETE" or scored "LEVEL1" in blue lettering.

38. Based upon its standardized procedures for responding to consumer reports with a "LEVEL3" or other adverse finding, Dollar Tree immediately took adverse action against Mr. Smith.

39. On or about October 25, 2023, Dollar Tree communicated the results of the background check to Mr. Smith in a letter purporting to be the pre-adverse action notice required by the FCRA, stating that Mr. Smith should contact Sterling within seven business days to dispute the report and promising not to make a decision on his application during that time period.

40. Mr. Smith followed instructions to dispute the results with Sterling and submitted his dispute on October 26, 2023.

41. Sterling removed the inaccurate criminal records from its report about Mr. Smith on the same day as his dispute, October 26, 2023, and communicated a corrected version of the report, without the inaccurate records, to Dollar Tree on the same date.

42. The corrected version of the Sterling report contained no criminal or other public records, any records designated above "LEVEL1" or otherwise indicated as adverse.

43. Despite receiving this clean background check on October 26, 2023, Dollar Tree did not hire Mr. Smith or make any effort to contact him at all.

44. Mr. Smith made multiple efforts to contact Dollar Tree after the background report was corrected, but was not able to reach anyone to save the job opportunity.

45. Dollar Tree's initial adverse decision on October 25, 2023 with respect to Mr. Smith's application was in fact the final decision, and the purported "pre-adverse action" notice provided on that date was a sham.

46. Therefore, Mr. Smith had no meaningful opportunity to change the adverse action taken against him at the time the decision was made, irrevocably, to not hire him.

47. Defendant willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement before taking its irrevocable adverse action (denying employment) against Mr. Smith.

48. As a result of Defendant's conduct described above, Mr. Smith has suffered harm in the form of denial of information necessary to vindicate his FCRA rights, financial and reputational harm, loss of employment opportunity, and emotional distress.

## V.  CLASS ALLEGATIONS

49. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All candidates for new employment, continued employment, transfer or promotion with Defendant or any subsidiary thereof residing in the United States (including all Territories and other political subdivisions of the United States) who were the subject of a background report containing one or more items of adverse information which Defendant treated as disqualifying, beginning two years prior to the filing of this action and extending through the most recent class certification order in this action.

50. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

51. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of job applicants and employees harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

52. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether Dollar Tree used consumer reports for employment purposes to take adverse action against consumers without first providing them with notice, a copy of the report, and a summary of FCRA rights at least five business days prior to the adverse action; and (2) whether Dollar Tree acted willfully or negligently.

53. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

54. **Adequacy**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in

such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

55. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.    CAUSES OF ACTION

### COUNT I
### FCRA § 1681b(b)(3) – Class Claim

65. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66. The background or consumer reports that Defendant purchases regarding employment applicants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

67. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must

provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

68. For purposes of this requirement, an "adverse action" includes "any … decision … that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

69. Defendant is a "person" that regularly uses consumer reports for employment purposes.

70. The FCRA requires Defendant, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

71. Defendant willfully violated section 1681b(b)(3) of the FCRA by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action based in whole or in part on the consumer report.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. Actual, statutory and punitive damages to be determined by the jury;

3. Attorneys' fees;

4. Costs of the action;

5. Such other relief as the Court deems just and proper

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: June 14, 2024

Respectfully submitted,

EDDIE JONATHAN SMITH, *individually, and on behalf of all others similarly situated*,

By: */s/ Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Drew D. Sarrett, VSB # 81658
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Telephone: (757) 930-3660
Email: drew@clalegal.com

**Francis Mailman Soumilas, P.C.**
James A. Francis*
John Soumilas*
Lauren KW Brennan*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

*\*Pro hac vice* applications forthcoming

*Attorneys for Plaintiff*